ACCEPTED
03-17-00849-CV
21544131
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/2/2018 9:48 AM
JEFFREY D. KYLE
CLERK

No. 03-17-00849-CV

IN THE COURT OF APPEALS FOR THE THIRD
DISTRICT OF TEXAS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/2/2018 9:48:29 AM
JEFFREY D. KYLE
Clerk

*In re Richard W. Jackson and Lisa C. Jackson*,
*Relators.*

From the County Court at Law No. 1, Travis County, Texas
Trial Court Cause No. C-1-CV-17-001833

**SURREPLY IN RESPONSE TO AMENDED PETITION FOR WRIT OF
MANDAMUS AND EMERGENCY MOTION TO STAY (1) TRIAL AND (2)
TRIAL COURT ORDER DISSOLVING INJUNCTION**

Michael L. Navarre
State Bar No. 00792711
mnavarre@bbsfirm.com
BEATTY BANGLE STRAMA, PC
400 West 15th Street, Suite 1450
Austin, Texas 78701
(512) 879-5050 Telephone
(512) 879-5040 Facsimile

ATTORNEYS FOR REAL PARTIES IN
INTEREST

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

INDEX OF AUTHORITIES.......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT AND AUTHORITIES............................................................................ 2

I.     This Mandamus Is Moot Because There Is Only One Amendment
And It Has Been Recorded .............................................................................. 2

II.    Ms. Cox And Ms. Ramsey Correctly Stated The Status Of Relators'
Claims ............................................................................................................. 3

III.   Relators Failed To Respond To The Existence Of Two Changed
Circumstances .................................................................................................. 4

IV.   Relators' Filing Of Their Sixth Amended Petition Is Not A Proper
Basis For Mandamus Relief ........................................................................... 5

V.    Relators Attempt To Reargue The Motion For Partial Summary Is
Not A Proper Ground For Mandamus ............................................................ 7

CONCLUSION AND PRAYER ................................................................................... 8

RULE 52.3(j) CERTIFICATION ................................................................................. 9

CERTIFICATE OF SERVICE ..................................................................................... 10

CERTIFICATE OF COMPLIANCE............................................................................. 10

i

# INDEX OF AUTHORITIES

**Page**

*F.D.I.C. v. Nueces Co.,*
   886 S.W.2d 766 (Tex. 1994) ...................................................................... 3

*In Re Uresti,*
   377 S.W.3d 696 (Tex. 2012) ...................................................................... 3

## INTRODUCTION

Relators' Reply is most noteworthy for what it does not contain. In their Petition, Relators claimed that there was no changed circumstance. Cox and Ramsey responded by identifying two changed circumstances.[1] First, recent discovery showed that Plaintiffs misled the trial court to obtain the temporary injunction. Second, as Relators previously admitted, there was a change in the law because, as Relators previously admitted, "the trial court reversed itself on the law."[2] Relators' Reply does not respond to the existence of these two changed circumstances.

While tacitly admitting the existence of changed circumstances that support the dissolution of the temporary injunction, Relators make several arguments that are either erroneous or self-inflicted. Cox and Ramsey respond as follows:

- Relators, not Cox and Ramsey, filed an amended petition with numerous new causes of action based on the recorded amendment.
- Relators are in this position because they misled the trial court and began harassing property owners to rescind their signatures.
- Contrary to Relators' Reply, Cox and Ramsey did not state that Relators' claims were not "live."
- Contrary to Relators' Reply, the Restrictive Covenants expressly prohibit renting "without the prior written consent of Developer."[3]

---

[1] Response to Mandamus at 3-5; 7-9.

[2] Relators' Emergency Motion for Relief at 2.

[3] Tab J, Restrictive Covenants at Art. IV.5.

1

Furthermore, as Relators' pleadings make clear, there is only one amendment at issue – the amendment that was recorded *before* Relators filed this mandamus action. There are no other amendments and Cox and Ramsey have agreed not to record any additional amendments. Therefore, the Court should dismiss this mandamus action and deny Relators' request for emergency relief.

## ARGUMENT AND AUTHORITIES

**I.    This Mandamus Is Moot Because There Is Only One Amendment And It Has Been Recorded.**

This mandamus is moot because the amendment has been recorded. Even a cursory review of the transcript of the temporary injunction hearing and related pleadings shows that there was only one amendment at issue:  the amendment to prohibit rentals for less than ninety days.[4]  The injunction prohibited the recording of that and any other amendment by Ms. Cox and Ms. Ramsey.[5]  After the temporary injunction was dissolved, it is undisputed that the amendment was recorded.[6]

Furthermore, Ms. Cox and Ms. Ramsey have agreed not to record any amendments to the Restrictive Covenants between now and the end of the proceedings in the trial court.[7]  There is no evidence to the contrary and Relators do

---

[4]  Tab E to Amended Petition for Mandamus, Transcript of TI Hearing.

[5]  Tab A to Amended Petition for Mandamus, Temporary Injunction.

[6]  Tab D to Amended Petition for Mandamus, Recorded Amendment.

[7]  Tab A to Response, Letter Agreement to Relators.

not even try to claim that Ms. Cox and Ms. Ramsey may somehow try to file another amendment in the meantime. Therefore, this mandamus is moot because the request to reinstate the injunction cannot "unrecord" the amendment. *F.D.I.C. v. Nueces Co.,* 886 S.W.2d 766, 767 (Tex. 1994); *In re Uresti*, 377 S.W.3d 696 (Tex. 2012).

In their Reply, Relators argue that a controversy exists because their "DJ claim requests a determination of the meaning of the restrictive covenants as concerns all amendments."[8] Relators miss the point. The question is not whether Relators' underlying DJ claim is moot, the question is whether the relief sought in Relators' Petition for Writ of Mandamus is moot. The relief sought in Relators' Petition for Mandamus is moot because it is undisputed that Ms. Cox and Ms. Ramsey recorded the amendment prior to Relators filing their Petition for Writ of Mandamus.

## II. Ms. Cox And Ms. Ramsey Correctly Stated The Status Of Relators' Claims.

In a related argument, Relators take Ms. Cox and Ms. Ramsey to task for supposedly stating that Relators "have no live claim supporting their temporary injunction."[9] However, Ms. Cox and Ms. Ramsey did not make such a statement. Instead, Ms. Cox and Ms. Ramsey correctly stated the status of Relators' claims in the following manner:[10]

---

[8] Relators' Reply at 6.

[9] Relators' Reply at 5.

[10] Response to Mandamus at 9.

The claims that served as the basis for the request for the temporary injunction were either (1) non-suited by Relators or (2) dismissed by the trial court in its summary judgment orders.

The claims that Relators non-suited included their claim for breach or attempted breach of restrictive covenant.

## III. Relators Failed To Respond To The Existence Of Two Changed Circumstances.

Ms. Cox and Ms. Ramsey identified two changed circumstances that support the trial court's dissolution of the temporary injunction. First, recent discovery showed that Relators had misled the trial court concerning due process and notice when they convinced the court to grant the temporary injunction. Specifically, Plaintiffs themselves sent a letter and flyer opposing the proposed change to all lot owners more than a month before the temporary injunction hearing.[11] The trial court explained its reversal by referencing Relators' prior false statements:[12]

> **"Probably because there were things that were said in that [temporary injunction] hearing that may not necessarily [] be true today."**

Relators failed to respond to this changed circumstance or somehow explain why they misled the trial court.

---

[11] Tab F to Response, Woodall Depo. Excerpts at 64:1-7; 65:1-15; Tab G to Response, Plaintiffs' Letter and Flyer.

[12] Tab I to Response, Transcript of December 8, 2017 Hearing at 7:3-5 (emphasis added).

Second, as Relators acknowledged, "the trial court reversed itself on the law."[13] This change of circumstance resulted from the trial court interpreting the restrictive covenants as a matter of law in favor of Ms. Cox and Ms. Ramsey. However, Relators failed to respond to this changed circumstance. Therefore, the trial court did not abuse its discretion in dissolving the temporary injunction.

## IV. Relators' Filing Of Their Sixth Amended Petition Is Not A Proper Basis For Mandamus Relief.

Relators spend an inordinate amount of time complaining that the dissolution of the temporary injunction and subsequent recording of the amendment has changed the nature of the underlying lawsuit.[14] However, any harm to Relators is self-inflicted and not a proper basis for mandamus relief.

First, Relators – not Ms. Cox or Ms. Jackson – chose to file a Sixth Amended Petition with numerous new causes of action concerning the amendment.[15] After the parties passed the trial setting because they would not be reached, counsel for Ms. Cox and Ms. Jackson proposed several new trial dates in early 2018. Relators' counsel initially responded that they were checking on availability for trial. Instead, Relators filed their Sixth Amended Petition that includes new claims of tortious interference with existing contracts, tortious interference with prospective relations,

---

[13] Relators' Emergency Motion for Relief at 2.

[14] Relators' Reply at 9-13.

[15] Tab I to Relators' Reply, Plaintiffs' Sixth Amended Petition.

conspiracy, suit to quiet title, and slander of title. Relators, not Ms. Cox or Ms. Jackson, chose to inject those issues into this case. Relators should not be allowed to now complain about the result of their own actions.

Second, contrary to Relators' claim, the existing Restrictive Covenants – prior to any amendment – prohibited their rental of their property. Relators failed to inform the Court that the existing Restrictive Covenants prohibit renting or leasing "without the prior written consent of Developer."[16] The trial court denied the parties' motions for partial summary judgment concerning this prohibition and whether it has been waived. This prohibition against rental has been present in this case since Relators filed their lawsuit.

Third, Relators are in this position because they misled the trial court. As discussed previously, Relators told the trial court that there had been a lack of notice and due process. But, as Relators knew, they were aware of the amendment and had actively campaigned against it. In fact, Ms. Woodall had sent a letter and flyer to every lot owner (except perhaps Ms. Cox and Ms. Ramsey) opposing the amendment. After being caught misleading the trial court, Relators complaints that they have been out in a bad position should fall on deaf ears.

---

[16] Tab J, Restrictive Covenants at Art. IV.5.

6

## V.    Relators Attempt To Reargue The Motion For Partial Summary Is Not A Proper Ground For Mandamus.

Relators also argue that Ms. Cox and Ms. Ramsey did not follow the alleged requirement of a recommendation from the Architectural Control Authority.[17] However, this is merely an attempt by Relators to reargue the trial court's order granting Defendants' Motion For Partial Summary Judgment As To Claims And Counterclaims Concerning Section 4 Of Article I Of The Restrictive Covenants ("MPSJ").[18]

As explained in the MPSJ, there were two "separate" and "standalone" provisions that permitted changes to the Restrictive Covenants.  Ms. Cox and Ms. Ramsey followed the provision in Section 4 of Article I that required the following: (1) the owners of a majority of lots must execute and record an instrument changing the provisions and (2) it "become[s] operative at the expiration of the particular period in which such instrument is executed and recorded, whether such particular period to be the aforesaid thirty-five (35) year period or any successive ten (10) year period thereafter."[19] It does not require (1) notice and (2) a recommendation from the architectural control authority.[20]

---

[17]  Relators' Reply at 8-9.

[18]  Tab H, Order on Defendants' Motions for Summary Judgment at 2; Tab D, Defendants' Motion For Partial Summary Judgment As To Claims And Counterclaims Concerning Section 4 Of Article I Of The Restrictive Covenants (without exhibits).

[19]  Tab J, Restrictive Covenants at Art. I.4.

[20]  *Id.*

The other provision, Article IX, contains a different voting requirement, does not contain a ten-year period requirement, and contains both requirements of (1) notice and (2) a recommendation from the architectural control authority.[21] The trial court rejected Relators request that it do violence to the Restrictive Covenants by copying and pasting requirements from one Article IX into Section 4 of Article I of the Restrictive Covenants. Relators made this request even though they admitted that the provision in Section 4 of Article I is a "separate" provision and Article IX is a "standalone" provision. Relators attempt to reargue the trial court's partial summary judgment order should be rejected and, more importantly, is not a basis for mandamus relief.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court dismiss Relators' Petition for Mandamus, deny Relators' Emergency Motion for Relief, and grant them such other relief as the Court deems proper.

---

[21] *Id.* at Article IX.

Respectfully submitted,

/s/ Michael L. Navarre
Michael L. Navarre
State Bar No. 00792711
BEATTY BANGLE STRAMA, PC
400 West 15th Street, Suite 1450
Austin, Texas 78701
(512) 879-5050 Telephone
(512) 879-5040 Facsimile
mnavarre@bbsfirm.com

*ATTORNEYS FOR REAL PARTIES IN INTEREST*

## RULE 52.3(j) CERTIFICATION

I have reviewed the response to the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

/s/ Michael L. Navarre
Michael L. Navarre

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was electronically served on counsel of record by electronic transmission on this 2nd day of January, 2018:

James Patrick Sutton – via jpatricksutton@jpatricksuttonlaw.com
The Law Office of J. Patrick Sutton
1706 W. 10th St.
Austin, Texas  78701

Mr. David M. Gottfried – via david.gottfried@thegottfriedfirm.com
The Gottfried Firm
West Sixth Place
1505 West Sixth Street
Austin, Texas 78703

*/s/ Michael L. Navarre*
Michael L. Navarre


## CERTIFICATE OF COMPLIANCE

Real Parties in Interest's Surreply in Response to Amended Petition for Writ of Mandamus and Emergency Motion to Stay (1) Trial and (2) Trial Court Order Dissolving Injunction complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(B) because it contains 1,708 words, excluding the parts of the reply exempted by Tex. R. App. P. 9.4(i)(1).  The undersigned relied on the word count of MS Word, the computer program used to prepare the brief.

*/s/ Michael L. Navarre*
Michael L. Navarre

**APPENDIX TO SURREPLY IN RESPONSE TO AMENDED PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION TO STAY (1) TRIAL AND (2) TRIAL COURT ORDER DISSOLVING INJUNCTION**

**Description**                                                                                                    **Tab**

Restrictive Covenants ................................................................................... J

# TAB J

# Restrictive Covenants

56-7393

MAR 27-72 9118 * 13.50

THE STATE OF TEXAS §

COUNTY OF TRAVIS §

KNOW ALL MEN BY THESE PRESENTS:

That Venture Development Company, a Partnership composed of Canfield Land Company, Inc., Cummings Land Company, Inc. and Gaylord Land Company, Inc., each such corporation having its principal place of business in Houston, Harris County, Texas, and Smith Land Company, Inc., having its principal place of business in Austin, Travis County, Texas, each a Texas corporation, being all of the Partners in Venture Development Company (hereinafter called the "Developer"), being the owner of all of that certain tract of land situated in Travis County, Texas, and known as Point Venture, Section Three-1 according to the plat of said subdivision recorded in the Office of the County Clerk of Travis County, Texas, on the 27th day of March, 1972, after having been approved as provided by law, and being recorded in Volume 58 Page 48 of the Plat Records of Travis County, Texas, to which plat and the record thereof reference is here made for a full and particular description of said land; and the Developer desiring to create and carry out a uniform plan and scheme for the improvement, development and sale of property in said Point Venture, Section Three-1 (herein referred to as "the Subdivision"), does hereby adopt, establish, promulgate and impress the following Reservations, Restrictions and Covenants, which shall be and are hereby made applicable to the Subdivisions:

I.

GENERAL PROVISIONS

Applicability

1. Each Contract, Deed or Deed of Trust which may be hereafter executed with respect to any property in the Subdivision shall be deemed and held to have been executed, delivered and accepted subject to all of the provisions of this instrument, including, without limitation, the Reservations, Restrictions and Covenants herein set forth, regardless of whether or not any of such provisions are set forth in said Contract, Deed or Deed of Trust, and whether or not referred to in any such instrument.

Dedication

2. The streets and roads shown on said recorded plats are dedicated to the use of the public. The utility easements shown thereon are dedicated subject to the reservations hereinafter set forth.

Reservations

3.a. No interest in the oil, gas, or other minerals in, on or under the Property will be conveyed by Developer; all interest in the same being expressly reserved by Developer.

b. The utility easements shown on the recorded plats are dedicated with the reservation that such utility easements are for the use and benefit of any public utility operating in Travis County, Texas, as well as for the benefit of the Developer and the property owners in the Subdivision to allow for the construction, repair, maintenance and operation of a system or systems of electric light and power, telephone lines, gas, water, sanitary sewers, storm

MAR 0 7 2017

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy: A. MORALES

DEED RECORDS
Travis County, Texas

1291 1452

sewers and any other utility or service which the Developer may find necessary or proper.

c. The title conveyed to any property in the Subdivision shall not be held or construed to include the title to the water, gas, electricity, telephone, storm sewer or sanitary sewer lines, poles, pipes, conduits or other appurtenances or facilities constructed by the Developer or public utility companies upon, under, along, across or through such public utility easements; and the right (but no obligation) to construct, maintain, repair and operate such systems, utilities, appurtenances and facilities is reserved to the Developer, its successors and assigns.

d. The right to sell or lease such lines, utilities, appurtenances or other facilities to any municipality, governmental agency, public service corporation or other party is hereby expressly reserved to the Developer.

e. The Developer reserves the right to make minor changes in and minor additions to such utility easements for the purpose of more efficiently serving the Subdivision or any property therein.

f. Neither the Developer, nor its successors or assigns, using said utility easements shall be liable for any damage done by any of such parties or any of their agents or employees to shrubbery, trees, flowers or other property of the land owner situated on the land covered by said utility easements.

g. The Developer reserves the right to construct one or more esplanades in the areas where esplanades are shown on the recorded plat. The Developer further reserves the right to improve, landscape, alter, modify and eliminate any one or more of such esplanades (or reinstall one or more of such esplanades) at any time, and from time to time, hereafter.

h. The Developer reserves the right at any time, and from time to time, hereafter to promulgate and impose restrictions (as well as vary and amend any such restrictions) as to all or any portion of the unplatted, reserve or unrestricted areas of the Subdivision identified on the aforesaid plat. Any such action by the Developer shall not, in order to be fully binding, require the joinder of any other person, whether such person be an owner of property in the Subdivision, a lienholder, a mortgagee, a Deed of Trust beneficiary or any other person.

Duration

4. The provisions hereof, including the Reservations, Restrictions and Covenants herein set forth, shall run with the land and shall be binding upon the Developer, its successors and assigns, and all persons or parties claiming under it or them for a period of thirty-five (35) years from the date hereof, at which time all of such provisions shall be automatically extended for successive periods of ten (10) years each, unless prior to the expiration of any such period of thirty-five (35) years or ten (10) years, the then owners of a majority of lots in the Subdivision shall have executed and recorded an instrument changing the provisions hereof, in whole or in part, the provisions of said instrument to become operative at the expiration of the particular period in which such instrument is executed and recorded, whether such particular period be the aforesaid thirty-five (35) year period or any successive ten (10) year period thereafter.

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017

Dana DeBeauvoir, County Clerk
By Deputy
A. MORALES

-2-

1291  1153

## Enforcement

5. In the event of any violation or attempted violation of any of the provisions hereof, including any of the Reservations, Restrictions or Covenants herein contained, enforcement shall be authorized by any proceedings at law or in equity against any person or persons violating or attempting to violate any of such provisions, including proceedings to restrain or prevent such violation or attempted violation by injunction, whether prohibitive in nature or mandatory in commanding compliance with such provisions; and it shall not be a prerequisite to the granting of any such injunction to show inadequacy of legal remedy or irreparable harm. Likewise, any person entitled to enforce the provisions hereof may recover such damages as such person has sustained by reason of the violation of such provisions. It shall be lawful for the Developer or for any person or persons owning property in the Subdivision (or in any other Section of Point Venture) to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any of such provisions.

## Partial Invalidity

6. In the event that any portion of the provisions hereof shall become or be held invalid, whether by reason of abandonment, waiver, estoppel, judicial decision or otherwise, such partial invalidity shall not affect, alter or impair any other provision hereof which was not thereby held invalid; and such other provisions, including Restrictions, Reservations and Covenants shall remain in full force and effect, binding in accordance with their terms.

## Effect of Violations on Mortgages

7. No violation of the provisions herein contained, or any portion thereof, shall affect the lien of any Mortgage or Deed of Trust presently or hereafter placed of record or otherwise affect the rights of the Mortgagee under any such Mortgage, holder of any such lien or beneficiary of any such Deed of Trust; and any such Mortgage, lien or Deed of Trust may, nevertheless, be enforced in accordance with its terms, subject, nevertheless, to the provisions herein contained including said Reservations, Restrictions and Covenants.

II.

### ARCHITECTURAL CONTROL

## Basic Rule

1. No building or other improvement of any character shall be erected or placed, or the erection or placing thereof commenced, or changes made in the design thereof or any addition made thereto or exterior alteration made therein after original construction, on any property in the Subdivision until the obtaining of the necessary approval (as hereinafter provided) of the construction plans and specifications and a plat showing the location of such building or other improvements. Approval shall be granted or withheld based on matters of compliance with the provisions of this instrument, quality of materials, harmony of external design and existing and proposed structures and location with respect to topography and finished grade elevation.

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017. Dana DeBeauvoir, County Clerk By Deputy: A. MORALES

-3-

4291 1454

Architectural
Control Authority

2.a. The authority to grant or withhold architectural control approval as referred to above is vested in the Developer; except, however, that such authority of the Developer shall cease and terminate upon the election of the Point Venture Architectural Control Committee, in which event such authority shall be vested in and exercised by the Point Venture Architectural Control Committee (as provided in b. below), hereinafter referred to, except as to plans and specifications and plats theretofore submitted to the Developer which shall continue to exercise such authority over all such plans, specifications and plats.

b. At such time as 75% of the lots in the Subdivision and in all other Sections of Point Venture (as heretofore or hereafter platted, from time to time) shall have been sold by the Developer, then the Developer shall cause a Statement of such circumstances to be placed of record in the Deed Records of Travis County, Texas. Thereupon, the lot owners in Point Venture may by vote, as hereinafter provided, elect a committee of five (5) members to be known as the Point Venture Architectural Control Committee (herein referred to as the "Committee"). Each member of the Committee must be an owner of property in some Section of Point Venture. Each lot owner shall be entitled to one (1) vote for each whole lot or building site owned by that owner. In the case of any building site composed of more than one (1) whole lot, such building site owner shall be entitled to one (1) vote for each whole lot contained within such building site.

The Developer shall be obligated to arrange for the holding of such election within sixty (60) days following the filing of the aforesaid Statement by the Developer in the Deed Records of Travis County, Texas, and give notice of the time and place of such election (which shall be in Travis County, Texas) not less than five (5) days prior to the holding thereof. Nothing herein shall be interpreted to require that the Developer actually file any such Statement so long as it has not subdivided and sold the entirety of the property, nor to affect the time at which the Developer might take such action if, in fact, the Developer does take such action.

The results of each such election shall promptly be determined on the basis of the majority of those owners then voting in such election.

After the first such election shall have been held, thereafter the Committee shall be obligated to arrange for elections (in the manner and after notice as set forth above) for the removal and/or replacement of Committee members when so requested in writing by thirty (30) or more lot owners in the Subdivision. Members of the Committee may, at any time, be relieved of their position and substitute members therefor designated by vote as set forth above.

Upon the death, resignation, refusal or inability of any member of the Committee to serve, the remaining members of the Committee shall fill the vacancy by appointment, pending an election as hereinabove provided for.

Effect of
Inaction

3. Approval or disapproval as to architectural control matters as set forth in the preceding provisions shall be in writing. In the event that the authority exercising the prerogative of approval

- 4 -

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017

Dana DeBeauvoir, County Clerk
By Deputy
A. MORALES

1291 1455

or disapproval (whether the Developer or the Committee) fails to approve or disapprove in writing any plans and specifications and plat submitted to it in thirty (30) days following such submission, such plans and specifications and plat shall be deemed approved and the construction of any such building and other improvements may be commenced and proceeded with in compliance with all such plans and specifications and plat and all of the other terms and provisions hereof.

Effect of
Approval

4.    The granting of the aforesaid approval shall constitute only an expression of opinion, whether by the Developer or the Committee, that the terms and provisions hereof shall be complied with if the building and/or other improvements are erected in accordance with said plans and specifications and plat; and such approval shall not constitute any nature of waiver or estoppel either as to the persons expressing such approvals or any other person in the event that such building and/or improvements are not constructed in accordance with such plans and specifications and plat.   Further, no person exercising any prerogative of approval or disapproval shall incur any liability by reason of the good faith exercise thereof.   Exercise of any such prerogative by one (1) or more members of the Committee in their capacity as such shall not constitute action by the Developer after the election of such Committee members, notwithstanding that any such Committee member may be a Director of the Developer.

### III.

### DESIGNATION OF TYPES OF LOTS

1.    All lots in the Subdivision as shown on the recorded plat as Lots 463 thru 553, inclusive, are hereby designated as "View Lots".

2.    All lots in the Subdivision as shown on the recorded plat as Lots 554 thru 570, inclusive, are hereby designated as "Cluster Cottage Lots".

3.    The "General Restrictions" set forth in IV. below shall be applicable to all types of lots in the Subdivision hereinabove enumerated and designated.   The "Special Restrictions" set forth in V. below shall, in addition to the General Restrictions, apply to the particular type of lots in the Subdivision so indicated.

### IV.

### GENERAL RESTRICTIONS

1.    None of the lots or the improvements thereon shall be used for anything other than single-family, private residential purposes. After the construction of such residences, it is understood that there may also be constructed a garage, servants' quarters and/or guest's quarters, so long as the same are connected (by covered breezeway or otherwise) with, and used in conjunction with such single-family, private residence.   For purposes of this instrument, the word "lot" shall not be deemed to include any portion of the following areas shown on the recorded plat:   the golf course, any esplanade, the club area, and any unrestricted or reserve areas shown on the plat.

2.    The living area of the main residential structure (exclusive of porches, whether open or screened, garage or other car parking facility, terraces, driveways and servants' quarters) shall be not less than the following respective amounts for each of the designated particular types of lots:

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017
Dana DeBeauvoir, County Clerk
By Deputy: A. MORALES

**EXHIBIT 1, page 5**          **TAB J - page 5**

View Lots: 1,200 sq. ft. for a one-story building;
1,500 sq. ft. for a two-story building; and

Cluster Cottage Lots: 800 sq. ft.

3.a. No building shall be located on any lot nearer to the front street line or nearer to the street side line than the minimum building set-back lines shown on the aforesaid plat (designated thereon as "Bldg. line"). Subject to the provisions of Paragraph 4., no building shall be located nearer than seven and one-half (7-1/2) feet to an interior side lot line. For the purpose of this covenant, eaves, steps and unroofed terraces shall not be considered as part of a building, provided, however, that this shall not be construed to permit any portion of the construction on a lot to encroach upon another lot. Variations from these requirements as to building location may be granted by the Architectural Control Authority if the above requirements are not feasible, considering the terrain of the lot.

b. No structure shall be placed on any lot which (by reason of high walls or fences, excessive height, specially peaked roof design, etc.) unreasonably will obscure the view of Lake Travis from a dwelling located or reasonably to be located upon an abutting lot (and, for this purpose "abutting lot" includes a lot separated only by a street). The decision of the Architectural Control Authority in this matter shall be final.

4.a. Any owner of one or more adjoining lots (or portions thereof) may consolidate such lots or portions into one building site, with the privilege of placing or constructing improvements on such resulting site, in which case side set-back lines shall be measured from the resulting side property lines rather than from the lot lines as indicated on the recorded plat. Any such composite building site must have a frontage at the building set-back line of not less than the minimum frontage of lots in the same block. Any such composite building site (or building site resulting from the remainder of one or more lots having been consolidated into a composite building site) must be of not less than nine thousand (9,000) square feet in area (Cluster Cottage Lots excepted - See Special Restrictions V.) and this shall supersede any contrary provision in the Subdivision plat. Any modification of a building site (changing such building site from either a single lot building site or from a multiple whole lot building site), whether as to size or configuration, may be made only with the prior written approval of the Developer until the Committee is selected and thereafter, only with the prior written approval of the Committee. Upon any such required approval having been obtained, such composite building site shall thereupon be regarded as a "lot" for all purposes hereunder, however, that for purposes of voting for the Committee (as provided under Paragraph II. 2.b. above), an owner shall be entitled to one (1) vote for each whole lot within such owner's building site.

b. Cluster Cottage Lots may have buildings nearer than seven and one-half (7-1/2) feet to an interior side lot line, subject to prior written approval of the Developer until the Committee is selected and thereafter, only with the prior written approval of the Committee. (See Special Restrictions V)

5. All lots in the Subdivision shall be used only for single-family residential purposes. No noxious or offensive activity of any sort shall be permitted, nor shall anything be done on any lot which may be or become an annoyance or nuisance to the neighborhood. No lot in the Subdivision shall be used for any commercial, business or professional purpose nor for church purposes. The renting or leasing of any improvements thereon or portion thereof, without the prior written consent of Developer, is prohibited. No house trailer, camper trailer, camper vehicle or motor vehicle (or portion thereof) shall be lived in on any lot.

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017
Dana DeBeauvoir, County Clerk
By Deputy: A. MORALES

-6-

1291  1457

6. No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence, except, however, that a garage may contain living quarters for bona fide servants and except also that a field office, as hereinafter provided may be established.

Until the Developer has sold all other lots in Point Venture (and during the progress of construction of residences in the Subdivision), a temporary field office for sales and related purposes may be located and maintained by the Developer (and/or its sales agents). The location of such field office may be changed, from time to time, as lots are sold. The Developer's right to maintain such field office (or permit such field office to be maintained) shall cease when all lots in Point Venture, except the lot upon which such field office is located, have been sold.

7. No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot, except that dogs, cats or other common household pets may be kept as household pets provided they are not kept, bred or maintained for commercial purposes and provided they do not constitute a nuisance and do not, in the sole judgment of the Developer constitute a danger or potential or actual disruption of other lot owners, their families or guests.

8. Where a wall, fence, planter or hedge is not specifically prohibited under the Special Restrictions set forth in V. below, the following (as to any permitted wall, fence, planter or hedge) shall apply: No wall, fence, planter or hedge in excess of two (2) feet high shall be erected or maintained nearer to the front lot line than the front building set-back line, nor on corner lots nearer to the side lot line than the building set-back line parallel to the side street. No rear fence, wall or hedge and no side fence, wall or hedge located between the side building line and the interior lot line (or located on the interior lot line) shall be more than six (6) feet high. (Cluster Cottage Lots excepted - see Special Restrictions V)

No object or thing which obstructs sight lines at elevations between two (2) and six (6) feet above the roadways within the triangular area formed by intersecting street property lines and a line connecting them at points twenty-five (25) feet from the intersection of the street lines (or extensions thereof) shall be placed, planted or permitted to remain on corner lots.

9. The drying of clothes in public view is prohibited, and the owners or occupants of any lots at the intersection of streets or adjacent to parks, playgrounds or other facilities where the rear yard or portion of the lot is visible to the public, shall construct and maintain a drying yard or other suitable enclosure to screen drying clothes from public view.

10. All lots shall be kept at all times in a sanitary, healthful and attractive condition, and the owner or occupants of all lots shall keep all weeds and grass thereon cut and shall in no event use any lot for storage of material or equipment except for normal residential requirements or incident to construction of improvements thereon as herein permitted, or permit the accumulation of garbage, trash or rubbish of any kind thereon. Any incinerator or other equipment for the storage or disposal of such material shall be kept in a clean, sanitary and sightly condition. During the construction of improvements no trash shall be burned on any

-7-

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017

Dana DeBeauvoir County Clerk
By Deputy A. MORALES

1291 1458

lot except in a safe manner, and, unless so burned, shall be removed by the lot owner. Boats, trailers and other parked vehicles are to be stored in a location no closer to the street than the front building set-back line, or in the case of a corner lot the side building line facing the street.

In the event of default on the part of the owner or occupant of any lot in observing the above requirements or any of them, such default continuing after ten (10) days written notice thereof, the Developer (until the Committee is selected, and thereafter, the Committee) may, without liability to the owner or occupant in trespass or otherwise, enter upon (or authorize one or more others to enter upon) said lot, and cuase to be cut, such weeds and grass, and remove or cause to be removed such garbage, trash and rubbish or do any other thing necessary to secure compliance with these restrictions, so as to place said lot in a neat, attractive, healthful and sanitary condition, and may charge the owner or occupant of such lot for the reasonable cost of such work and associated materials. The owner or occupant, as the case may be, agrees by purchase or occupation of the property to pay such statement immediately upon receipt thereof; however, the payment of such charge is not secured by any nature of lien on the property.

11. Before initial residencial occupancy, no sign, advertisement, billboard or advertising structure of any kind may be erected or maintained on any lot in the Subdivision without the prior approval of the Developer; and any such approval which is granted by the Developer may be withdrawn at any time by the Developer, in which event, the party granted such permission shall, within the period designated by the Developer (which in no event shall be less than five (5) days), thereupon remove same. After initial residential occupancy of improvements on any particular lot in the Subdivision, no sign, advertisement, billboard or advertising structure of any kind other than a normal for-sale sign approved by the Developer as to design, not exceeding two feet by three feet (2' x 3') erected on a post in the ground, and applicable to such lot alone, may be erected or maintained on such lot.

The Developer until the Committee is selected, and thereafter the Committee, shall have the right to remove and dispose of any such prohibited sign, advertisement, billboard, or advertising structure which is placed on any lot, and in so doing shall not be subject to any liability for trespass or other tort in connection therewith or arising from such removal nor in any way be liable for any accounting or other claim by reason of the disposition thereof.

12. The digging of dirt or the removal of any dirt from any lot is expressly prohibited except as necessary in conjunction with the landscaping of or construction on such lot.

13. No lot or other portion of Point Venture shall be used or permitted for hunting or for the discharge of any pistol, rifle, shotgun, or any other firearm, or any bow and arrow or any other device capable of killing or injuring.

14. No outside toilets will be permitted, and no installation of any type of device for disposal of sewage shall be allowed which would result in raw or untreated or unsanitary sewage being carried into any water body. No septic tank or other means of sewage disposal may be installed unless approved by the proper governmental authorities having jurisdiction with respect thereto and the Developer.

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017

Dana DeBeauvoir County Clerk

By Deputy: A. MORALES

-8-

1291 1459

15. No oil drilling, oil development operations, oil refining, or mining operations of any kind shall be permitted upon any lot, nor shall any wells, tanks, tunnels, mineral excavations or shafts be permitted upon any lot. No derrick or other structure designed for use in boring for oil or natural gas, shall be erected, maintained or permitted on any building site. At no time shall the drilling, usage or operation of any water well be permitted on any lot.

16. Drainage structures under private driveways shall always have a net drainage opening area of sufficient size to permit the free flow of water without backwater.

17. All property owners, members of their families and their guests, shall have the right of ingress and egress to the lake through the park areas as shown on the Point Venture Section Two Subdivision plat. Such right shall extend to and include the owners of lots within Section Three-1 of the Point Venture Subdivision as well as subsequent sections developed by the Developer from lands contiguous to or in the vicinity of the said Point Venture Subdivision. All parks and improvements shall be available for use by such property owners, their families and guests, at their own risk. When 75 % of the lots in all sections of Point Venture Subdivision have been sold, or sooner at the election of the Developer, Developer may transfer title to all parks and other community areas to the Venture Yacht and Country Club or other civic organization active in the area, after which the operation of and maintenance and payment of taxes on such parks and other community areas shall be the responsibility of such transferee.

18. The Developers or any person, firm or corporation operating the golf course in the Subdivision shall not be held liable for any damages to any lot owner, their guests, or their heirs, administrators or assigns resulting from operation of said golf course.

19. The property included in the Subdivision is subject to all easements of record, and especially to include those certain easements in favor of Lower Colorado River Authority of record in Vol. 587, page 440, Vol. 601, page 536, Vol. 676, page 428, and Vol. 678, page 127 of the Travis County Deed Records, to which easements and their record thereof reference is hereby made for all purposes. The property is also subject to that certain Oil and Gas Lease, dated January 6, 1967, as recorded in Volume 3245, page 1722, Deed Records of Travis County, Texas.

20. Where underground utility services shall be available for said lots, no above surface utility wires will be installed outside of any structure. Underground utility service lines shall extend through and under said lots in order to serve any structure thereon, and the area above said underground lines and extending 2-1/2 feet to each side of said underground line shall be subject to excavation, refilling and ingress and egress for the installation, inspection, repair, replacing and removing of said underground facilities by such utility company; and owners of said lots shall ascertain the location of said lines and keep the area over the route of said lines free of excavation and clear of structures, trees or other obstructions.

V.

SPECIAL RESTRICTIONS

1. In addition to the General Restrictions set forth in IV. above, the following restrictions shall apply:

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017

Dana DeBeauvoir County Clerk
By Deputy A. MORALES

-9-

1291 1460

a. No pier, dock, or other structure shall be permitted without prior approval of the Architectural Control Authority as set forth in II. above.

b. Any garage must be attached to the main residence and must be not nearer to the lake shore than the main residence itself.

2. In addition to the General Restrictions set forth in IV. above, the following restrictions shall apply to Cluster Cottage Lots:

a. No wall, fence, planter hedge (or other improvements or object serving a like or similar purpose) shall be constructed or permitted without the written consent of the Developer.

b. Each person acquiring a Cluster Cottage lot must be a member of Point Venture, Inc., and must remain a member in good standing as long as they own property in the Cluster Cottage Lot section.

c. Since zero lot line and/or common wall concepts are anticipated, the Developer, until the Committee is selected and thereafter the Committee, shall be the sole and prevailing authority regarding wall, fence and building set-back requirements. Such authority shall at all times be consistant and in the best interest for all parties concerned in the Cluster Cottage Area.

VI.

VENTURE YACHT AND COUNTRY CLUB MEMBERSHIP

Each person acquiring property in the Subdivision (whether acquiring same initially or upon resale) must first apply and be accepted for membership in the Venture Yacht and Country Club, and must remain a member in good standing as long as they own property in the Subdivision.

VII.

VENTURE YACHT AND COUNTRY CLUB FUND

1. Each lot (or residential building site) in the Subdivision shall be and is hereby made subject to an annual Venture Yacht and Country Club charge (hereafter referred to as the "Club Fund"), except as otherwise hereinafter provided.

2. The Venture Yacht and Country Club Fund referred to shall be used to create a fund to be known as the "Club Fund"; and each such "Club Fund" charge shall (except as otherwise hereinafter provided) be paid by the owner of each lot (or residential building site) annually, in advance, on or before September 1st of each year, beginning 1972.

3. The exact amount of each Club Fund charge will be determined by the Developer during the month preceding the due date of said Club Fund. All other matters relating to the assessment, collection, expenditure and administration of the Club Fund shall be determined by the Developer.

4. The Club Fund charge shall not, without the consent of the Developer, apply to lots owned by the Developer or owned by any person, firm, association or corporation engaged primarily in the building and construction business which has acquired title to any such lots for the sole purpose of constructing improvements thereon and thereafter selling such lots; however, upon any such sale of such lots by such person, firm, association or corporation to a purchaser whose primary purpose is to occupy and/or rent and/or lease such lot (and improvements thereon, if any) to some other occupant, then the Club Fund charge shall thereupon be applicable to such lot; and the Developer hereby consents to the applicability of the Club Fund charge to each such lot under the circumstances herein stated. Any transfer of title to any lot by any such person, firm, association or corporation engaged primarily in the building and construction business to a tranferee engaged primarily in the building and construction business shall not result in the applicability of the Club Fund charge to such lot owned by the transferee or any succeeding transferee primarily engaged in

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017 Dana DeBeauvoir County Clerk By Deputy: A MORALES

-10-

the building and construction business without the consent of the Developer. The Developer reserves the right at all times, in his own judgment and discretion, to exempt any lot in the Subdivision from the Club Fund charge, and exercise of such judgment and discretion when made in good faith shall be binding and conclusive on all persons and interests. The Developer shall have the further right at any time, and from time to time, to adjust, alter or waive said Club Fund charge from year to year as it deems proper; and Developer shall have the right at any time to discontinue or abandon such Club Fund Charge, without incurring liability to any person whomsoever by filing a written instrument in the office of the County Clerk of Travis County, Texas, declaring such discontinuance or abandonment.

5. The Club Fund charges collected shall be paid into the Venture Yacht and Country Club Fund to be held and used for the benefit, directly or indirectly, of the Subdivision; and such Club Fund may be expended by the Developer for any purposes which, in the judgment of the Developer will tend to maintain the property values in the Subdivision, including by way of example but not by way of limitation: providing for the enforcement of the provisions of this instrument, including the aforesaid Reservations, Restrictions and Covenants; for the maintenance, operation, repair, benefit and welfare of any recreational and/or utility facilities which might hereafter be established in Point Venture; and generally for doing any other thing necessary or desirable in the opinion of the Developer to maintain or improve the property of the Subdivision. The use of the Club Fund for any of these purposes is permissive and not mandatory, and the decision of the Developer with respect thereto shall be final, so long as made in good faith.

6. In order to secure the payment of the Club Fund charge hereby levied, a vendor's lien shall be and is hereby reserved in the Deed from the Developer to the purchaser of each lot or portion thereof, which lien shall be enforceable through appropriate judicial proceedings by the Developer. Said lien shall be deemed subordinate to the lien or liens of any bona fide lender which hereafter lends money for the purchase of any property in the Subdivision, and/or for construction (including improvement) and/or permanent financing of improvements on any such property.

7. These provisions as to the Club Fund charge and the Venture Yacht and Country Club Fund shall continue in effect unless changed in the manner and at the time or times hereinabove provided for effecting changes in the restrictive covenants hereinabove set forth.

## VIII.

### TRANSFER OF FUNCTIONS OF THE DEVELOPER

The Developer may at any time hereafter cause one or more non-profit corporations to be organized under the laws of the State of Texas for the purpose of exercising all or any of the duties and prerogatives of the Developer hereunder (including the matters relating to "Club Fund" charges and the Venture Yacht and Country Club Fund). Any such delegation of authority and duties shall serve to automatically release the Developer from further liability with respect thereto and vest such duties and prerogatives in such non-profit corporations. Any such delegations shall be evidenced by an instrument amending this instrument, placed of record in the Deed Records of Travis County, Texas, and joined by the Developer and the aforesaid non-profit corporations but not, however, requiring the joinder of any other person in order to be fully binding, whether

-11-

I, Dana DeBeauvoir, County Clerk, Travis County Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on.

Dana DeBeauvoir, County Clerk    MAR 0 7 2017
By Deputy A. MORALES

1291 1402

**EXHIBIT 1, page 11**          **TAB J - page 11**

such other person be an owner of property in the Subdivision, a lienholder, mortgagee Deed of Trust beneficiary or any other person.

## IX.

### AMENDMENTS

Any or all of the covenants herein may be annulled, amended or modified at any time at the recommendation of the Architectural Control Authority, or its successors, and ratified by a vote of two-thirds of the lot owners in the Subdivision. All such lot owners shall be given thirty (30) days notice in writing of any proposed amendment before same is adopted. There shall be no annullment, amendment or modification of these covenants without the prior recommendation of the Architectural Control Authority.

## X.

### BINDING EFFECT

All of the provisions hereof shall be covenants running with the land thereby affected. The provisions hereof shall be binding upon and inure to the benefit of the owners of the land affected and the Developer and their respective heirs, executors, administrators, successors and assigns.

## XI.

### CAPTIONS

The captions inserted at the beginning of any paragraph of these Restrictions are intended for convenience of reference only and shall not be deemed to constitute a part of these Restrictions nor be used in the construction or interpretation of this instrument nor shall such captions be deemed indicative of the intent of any party hereto.

WITNESS my hand at Houston, Texas, on this the _15th_ day of _March_, 1972.

VENTURE DEVELOPMENT COMPANY
A Partnership

By Smith Land Company, Inc.,
Partner, Agent and Attorney-in-Fact

ATTEST:

By _____
Vice President

_____
Assistant Secretary

-12-

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 20

Dana DeBeauvoir, County Clerk
By Deputy: A. MORALES

1291  1463

56-7405

THE STATE OF TEXAS §

COUNTY OF _Harris_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _Joel M Cummings_, Vice President of SMITH LAND COMPANY, INC., said Corporation being a partner in and agent and attorney-in-fact for Venture Development Company, a partnership, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of said Smith Land Company, Inc., a Texas corporation, and that he executed the same as the act and deed of such Corporation as a partner in and agent and attorney-in-fact for Venture Development Company, for the purposes and consideration therein expressed and in the capacities therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _15th_ day of _March_, 1972.

"NOTARY SEAL"

_Hazel W. Klanke_
Notary Public in and for
_Harris_ County, Texas.

FILED
MAR 27  10 45 AM '72
COUNTY CLERK
TRAVIS COUNTY, TEXAS

STATE OF TEXAS          COUNTY OF TRAVIS
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me; and was duly RECORDED, in the Volume and Page of the named RECORDS of Travis County, Texas, as stamped hereon by me, on

MAR 27 1972


COUNTY CLERK
TRAVIS COUNTY, TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAR 0 7 2017
Dana DeBeauvoir, County Clerk
By Deputy: A. MORALES

1291  1464